UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALINDA COMPEAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | Case No. 1:21-cv-01447-CDB (SS)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AFFIRMING DECISION OF COMMISSIONER OF SOCIAL SECURITY<br><br>(Docs. 20, 24) |

Plaintiff Rosalinda Compean ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits under the Social Security Act. (Doc. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Docs. 20, 24). Upon review of the Administrative Record ("AR") and the parties' briefs, the Court finds and rules as follows.[1]

**I.    BACKGROUND**

**A. Administrative Proceedings and ALJ's Decision**

In February 2019, Plaintiff filed a Title II application for disability insurance benefits. (AR 492-498). Plaintiff's application was denied and, after reconsideration, was denied again. (AR

---

[1] On March 4, 2022, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings pursuant to 28 U.S.C. 636(c)(1), this action was reassigned to a U.S. Magistrate Judge. (Doc. 13).

354-372, 374-387). Plaintiff then filed a request for a hearing before an Administrative Law Judge ("ALJ"). (AR 404-405, 422-431). On October 9, 2020, the assigned ALJ, Kurt D. Schuman, held a hearing; Plaintiff and her counsel attended, as did vocational expert ("VE") Bonnie Martindale. (AR 304-337). The ALJ issued his decision on November 9, 2020, finding Plaintiff not disabled. (AR 13-26). On August 5, 2021, the Appeals Council denied Plaintiff's request for review. (AR 1-6). Thereafter, Plaintiff filed the instant action.

In his decision, the ALJ used the five-step sequential evaluation process promulgated by the Social Security Administration for determining whether an individual is disabled. (AR 14-16) (citing 20 C.F.R. 404.1520a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 25, 2017, the alleged onset date. At step two, the ALJ concluded that Plaintiff had the following severe impairments: fibromyalgia and asthma. The ALJ also found that Plaintiff had the following non-severe impairments: obesity, carpal tunnel syndrome, osteoarthritis of the left first carpometacarpal joint, left trigger thumb, degenerative disc disease of the lumbar spine, lumbosacral spondylosis, thoracic spondylosis, anxiety, obsessive compulsive disorder, and posttraumatic stress disorder. At step three, after identifying these impairments, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 18).

The ALJ concluded that Plaintiff's medically determinable mental impairments were not server after considering the four broad functional areas of mental functioning listed in the "paragraph B" criteria.[2] The first functional area is understanding, remembering, or applying

---

[2] The "paragraph B criteria" evaluates mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id*. To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. *Id.* An "extreme" limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* A "marked" limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis. *Id.* A "moderate" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and on a sustained basis is "fair." *Id.* And a "mild" degree of mental limitation means that functioning in this area independently, appropriately, effectively, and

information. The second functional area is interacting with others.  The third functional area is concentrating, persisting, or maintaining pace.  Lastly, the fourth functional area is adapting or managing oneself.  The ALJ found that Plaintiff had mild limitations in all four functional areas. (AR 16-17).

The ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(c).  (AR 18).  The ALJ found that the Plaintiff's impairments could reasonably be expected to cause her alleged symptoms but the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the evidence in the record.  (AR 18-20).  The ALJ, citing to treatment notes, determined that the evidence of record did not provide support for the existence of greater limitations above those assessed in the RFC as to fibromyalgia and asthma.  (AR 20).  The ALJ examined the opinions of healthcare practitioners in the record, finding partially persuasive the opinion of state agency medical consultant P. Frye (AR 20-21); unpersuasive the opinions of state agency medical consultant A. Khong and Plaintiff's own medical source, physician Kyaw Swe (AR 21); and partially persuasive the opinions of state agency psychological consultants Uwe Jacobs and Jane Buerger (AR 21).

At step four, the ALJ found that Plaintiff was capable of performing past relevant work as a community program aide, with such work not requiring the performance of work-related activities precluded by the Plaintiff's RFC.  The ALJ explained his findings by discussing the testimony of the VE during the hearing and noting that Plaintiff had worked as a home health aide and community program aide, and both jobs satisfied the requirements to qualify as past relevant work.  The ALJ acknowledged and credited the VE's testimony that Plaintiff would be able to perform the requirements of a community program aide, as generally performed, finding that the RFC permits Plaintiff to perform such work as generally performed.  (AR 22).

The ALJ found Plaintiff had not been under a disability from September 25, 2017, through the date of his decision, namely November 9, 2020.  (AR 22).

---

on a sustained basis is "slightly limited."  *Id.*; *see Carlos v. Comm'r of Soc. Sec.*, 1:21-cv-00517-SAB, 2023 WL 1868870, at n.7 (E.D. Cal. Feb. 9, 2023).

3

### B. Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.* An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**III.   ISSUES AND ANALYSIS**

Plaintiff seeks judicial review of the Commissioner's final decision denying her application. (Doc. 1). Plaintiff raises the following issues:

1. The ALJ provided no analysis regarding why he followed the vocational expert's opinion with respect to past relevant work (Doc. 20 at 4);
2. New evidence submitted to the Appeals Council warrants additional limitations in the RFC (*id.*); and
3. The environmental limitations included by the ALJ in the RFC are inconsistent with the medical record (*id.* at 5).

///

///

6

### A. Whether the ALJ Erred in Following the Vocational Expert's Opinion with Respect to Past Relevant Work

At step four, a claimant has the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. § 404.1520(e); *id.* § 416.920(e). "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion." *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001) (citations omitted). The ALJ must look at the RFC and the physical and mental demands of the claimant's past relevant work. The claimant must have the ability to perform either the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Id.* at 844-845. The claimant is not required to have the ability to perform both but, rather, one or the other. *See Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (explaining that "[a] claimant must be able to perform her past relevant work either as actually performed or as generally performed in the national economy") (citing *Pinto*, 249 F.3d 840 at 845). The ALJ is not required to provide explicit findings at step four regarding a claimant's past relevant work both as generally performed and as actually performed. *Pinto*, 249 F.3d at 845 ("[t]he claimant has the burden of proving an inability to return to his former type of work and not just to his former job") (citing *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986)).

"An ALJ may take administrative notice of any reliable job information, including information provided by a VE." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). A "VE's recognized expertise provides the necessary foundation for his or her testimony" and, accordingly, "no additional foundation is required." *Id.* However, the ALJ cannot "rely on a vocational expert's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the Dictionary of Occupational Titles." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007). The ALJ has an affirmative duty to inquire as to whether there are potential conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT") and direct an explanation from the VE regarding any such conflicts. *See* SSR 00-4p; *see also Massachi*, 486 F.3d at 1152-53. The ALJ must determine whether any such explanation is

1  "reasonable and whether a basis exists for relying on the expert rather than the DOT." *Massachi*,
2  486 F.3d at 1153.  Even if a VE proclaims that her testimony is consistent with the DOT, "[i]f a
3  conflict is 'obvious or apparent,' this triggers the ALJ's obligation to inquire further … the focus
4  of the conflict inquiry is the 'essential, integral, or expected' job requirements set forth in the DOT."
5  *Lashaw O. v. Comm'r of Soc. Sec.*, No. 24-CV-1461-W-SBC, 2025 WL 1482282, at *13 (S.D. Cal.
6  May 23, 2025) (finding obvious conflict between DOT definition of housekeeper job, where
7  common sense and real-world experience demonstrated majority of tasks required regular standing
8  and walking, and RFC that plaintiff sit for five minutes every thirty minutes).

### i. Parties' Arguments

Plaintiff's arguments are very brief, consisting of one paragraph.  (Doc. 20 at 4).  She states that, in the decision, the ALJ credits the VE's opinion that a community program aide involves light, semi-skilled work, but that Plaintiff performed this work at a medium level.  She asserts that her job as a community aide was not akin to a regular community aide.  She provides that her job required "attending to the homeless in homeless camps, sometimes in steep terrain, bringing equipment to their location and sometimes physically moving them."  She states that this work is different from the classification used by the VE and that the ALJ erred in failing to provide any analysis as to why he followed the VE opinion "with respect to the use of community aide in the national economy rather than as performed by the claimant."  *Id.*  Plaintiff provides no further facts, reasoning, or citations to the record in support.

Defendant argues that the VE's testimony constituted substantial evidence supporting the ALJ's findings, at step four of his analysis, that Plaintiff could perform her past relevant work as a community program aide.  (Doc. 24 at 6).  Defendant asserts that Plaintiff's objections to the VE's categorization of Plaintiff's previous work is waived as a result of Plaintiff's counsel failing to proffer such objections at the hearing.  *Id.* at 8-9.  Defendant argues that the fundamental nature of Plaintiff's work was as provided in the Dictionary of Occupational Titles listing for "community program aide."  Defendant contends that Plaintiff having performed her job at a higher exertional level does not "convert her occupation into a wholly different one either."  *Id.* at 9.  And, Defendant further asserts, neither does the fact that Plaintiff, at times, worked in an outdoor setting.  Defendant

8

provides that established law sets forth VEs as reliable sources of occupational information and, thus, the ALJ properly relied on the VE's testimony. *Id.* at 10.

### ii. Analysis

As a preliminary matter, Plaintiff's counsel was afforded an opportunity during the hearing to object to the VE's appointment and did not do so. (AR 328).  Insofar as Plaintiff seeks now to object to the VE's qualifications, or on other evidentiary grounds that were available for evaluation by Plaintiff's counsel at the time, such arguments are waived. *See Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017) (discussing the requirement to raise issues during the hearing in order to preserve them for appeal and explaining that "[w]e held in light of the fundamental principle that an agency, its experts, and its administrative law judges are better positioned to weigh conflicting evidence than a reviewing court") (citing *Meanel v. Apfel*, 172 F.3d 1111 (9th Cir. 1999), *as amended* (June 22, 1999)).  However, as to any issues not involving conflicting evidence, such as potential inconsistencies between the VE's testimony and the DOT, such issues are not forfeited. *See Lashaw*, 2025 WL 1482282, at *12 ("But the thrust of Plaintiff's argument here … relates not to a 'job numbers' issue but rather to a conflict between the VE's testimony and the DOT, which does not require the Court to weigh conflicting evidence … Thus, Plaintiff's argument is not forfeited.") (citations and quotations omitted).

During the hearing, Plaintiff described the past work she performed. (AR 322-323).  When beginning the examination of the VE, the ALJ asked the VE as follows: "Do you understand that if you give an opinion that conflicts with the information in the DOT that you need to advise use of the conflict and the basis for your opinion?"  The VE responded affirmatively. (AR 328).  The VE then described the jobs, as provided in the DOT, that most fit the description of past relevant work provided by the Plaintiff. (AR 328-330).  After hearing from the Plaintiff regarding the work she performed, the VE agreed with the ALJ's determination that the community program aide job, as actually performed by Plaintiff, was at the medium exertional level. (AR 330-332).  This differs from the DOT classification of the job, which is light work. (AR 22); D.O.T. 195.367-010.

It is error for an ALJ to classify a past occupation "according to the least demanding function" performed by the claimant in that job. *Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1166

9

(9th Cir. 2008) (quotation omitted). Here, however, a review of the DOT description for "community program aide" (D.O.T. 195.367-010) and the testimony of Plaintiff (AR 323) does not evidence that the ALJ classified Plaintiff's job by its least demanding function. Plaintiff testified that she would bring homeless individuals food, take them to the doctor, and make appointments for them, as well as bring them to Bakersfield to help them obtain identification or file for Social Security. Plaintiff would have to assist them in and out of vehicles, with their wheelchairs, or if they used a cane to ambulate. She would retrieve their belonging when they were moved to shelters. (AR 323). Plaintiff fails to identify facts or articulate reasoning that the ALJ classified her job according to its least demanding function. *See Laurie A. M. v. Kijakazi*, No. ED CV 21-1958-ODW(E), 2022 WL 2610246, at *4 (C.D. Cal. July 8, 2022) (collecting cases and explaining that a job does not become a composite job merely because, as actually performed, it included tasks not generally performed in such a job). Nor does there appear to be any obvious conflict that would trigger the ALJ's duty to inquire further, namely between the VE testimony and hypotheticals posed (AR 332-334), the DOT description of the community program aide job, and the RFC issued by the ALJ (AR 18).

In evaluating the fact that, as performed, Plaintiff's job consisted of medium work rather than light work, the ALJ was permitted to use either the "actually performed test" or the "generally performed test." *See* SSR 82-61. The "generally performed test" provides that, if a job previously performed by a claimant has functional demands and duties greatly in excess of those generally required for the job by other employers in the national economy, and the claimant cannot perform these duties, she is "not disabled" if she can still perform the functional demands and duties of the job as generally required by employers in the national economy. *See id.* The ALJ found, relying on the VE's testimony, that Plaintiff would be able to perform the requirements of a community program aide as generally performed. (AR 22).

As the ALJ did not misclassify Plaintiff's previous work according to its least demanding function, properly relied on the VE testimony, and accurately applied the "generally performed" test, substantial evidence supports his determination at step four. The ALJ was not required to provide explicit findings at step four regarding Plaintiff's past relevant work both as generally

performed and as actually performed.  *See Pinto*, 249 F.3d at 845.

### B. Whether New Evidence Submitted to the Appeals Council Warranted Remand

The Social Security regulations govern when the Appeals Council is obligated to consider additional evidence submitted after the ALJ issues a decision.  *See* 20 C.F.R. § 416.1470; *id.* § 404.970.  Pursuant to the regulations, the Appeals Council "will review a case if … the Appeals Council receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision."  *Id.* § 416.1470(a)(5); *id.* § 404.970(a)(5).  Additionally, the claimant must establish good cause exists for the late submission.  *Id.* § 416.1470(b); *id.* § 404.970(b).

It is the claimant's burden to establish the evidence should have been considered by the Appeals Council under the regulations.  *Garcia v. Saul*, No. 1:19-CV-1103-JLT, 2021 WL 223205, at *4 (E.D. Cal. Jan. 22, 2021) (citing *Hawks v. Berryhill*, No. 1:17CV1021, 2018 WL 6728037 at *4 (M.D.N.C. Dec. 21, 2018)).  When the Appeals Council fails to "consider" additional evidence that satisfies the requirements of 20 C.F.R. § 404.970(b) or § 416.1470(b), a remand for further administrative proceedings is appropriate.  *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011).

The Ninth Circuit has distinguished between evidence the Appeals Council "considered" and evidence the Appeals Council merely "looked at" to determine whether the additional evidence was incorporated into the record.  "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence."  *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).  In contrast, when the Appeals Council "only looked at the evidence, and determined it did not meet the [Social Security regulations'] standard for consideration … the new evidence did not become part of the record, and [the court] may not consider it."  *Amor v. Berryhill*, 743 Fed. App'x 145, 146 (9th Cir. 2018); *see Garcia*, 2021 WL 223205, at *3 (observing Ninth Circuit distinguishes between a case where the Appeals Council "considered" evidence and made it part of the

11

administrative record with a case where the Appeals Council only "looked at" the evidence).

Importantly, where the Appeals Council only looks at the evidence and it does not become part of the administrative record, the district court "may not consider it" unless the plaintiff carries her burden to demonstrate the evidence should have been considered by the Appeals Council. *Amor*, 743 Fed. App'x at 146; *see Hensley v. Comm'r of Soc. Sec.*, No. 2:20-CV-1448-KJN, 2022 WL 891289, at *11 (E.D. Cal. Mar. 25, 2022), *aff'd sub nom. Hensley v. Kijakazi*, No. 22-15796, 2023 WL 4700635 (9th Cir. July 24, 2023) (citing 20 C.F.R. § 404.935(b) (making "good cause" one of the three requirements for Appeals Council consideration of new evidence)).

### i. Parties' Arguments

Plaintiff, after briefly discussing the letter of physician Salvador Ronald Del Rosario submitted to the Appeals Council, asserts that the letter's contents would "warrant even greater limitations on residual functional capacity warranting remand to consider." (Doc. 20 at 4). Plaintiff provides no further facts, reasoning, or citations to the record in support.

Defendant asserts that Dr. Del Rosario's letter "did not change the fact that substantial evidence supports the ALJ's decision." Defendant argues that the limitations in the letter were not greater than those included in the RFC, that the pain testimony therein is insufficient to establish disability, and Plaintiff's reliance on her hand braces is "unavailing because the letter states that she wears them at night." (Doc. 24 at 12-13; citations omitted).

### ii. Analysis – Whether Appeals Council "Considered" or "Looked At" the Evidence

As a preliminary matter, though Defendant briefly discusses the holding in *Brewes*[3] (Doc. 24 at 11-12), neither party addressed whether the Appeals Council "considered" the newly submitted evidence, such that the Court must consider it when reviewing the ALJ's determination. In this context, the word "considered" is a term of art. *See Hensley*, 2022 WL 891289, at *11. As is the case here, the Appeals Council's decision does not always address all relevant factors in the applicable regulations nor clearly state whether it did or did not consider the additional records. *See id.* at *12.

---

[3] *Supra*, 682 F.3d at 1159-60, 1161-63.

1    Here, in relevant part, the Appeals Council stated:

> You submitted 2 pages from Kaiser Permanente dated November 30, 2020, concerning a provider's note and 277 pages from Kaiser Permanente dated September 1, 2020, to February 3, 2021. We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence. Additionally, the Administrative Law Judge decided your case through November 9, 2020. Subsequent additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before November 9, 2020.

(AR 2).

The Court Transcript Index (Doc. 16-3 at 1) includes a two-page letter, dated November 30, 2020, from physician Salvador Ronald Del Rosario (AR 8-9). Dr. Rosario describes mental health diagnoses, chronic medical conditions, and pain symptoms. (AR 9). Inclusion of this record does not evidence that the Appeals Council considered it and made it part of the administrative record. Rather, its location under the Court Transcript Index and not the list of exhibits suggests the Appeals Council did not consider it. Additionally, the 277 pages from Kaiser Permanente dated September 1, 2020, to February 3, 2021, are not included anywhere in the administrative transcript, further evidencing that the Appeals Council did not consider such evidence. *See Hensley*, 2022 WL 891289, at *13 ("Further, the physical inclusion of Dr. Chaney's opinion in the Administrative Transcript transmitted to this court does not mean that the Appeals Council considered it and made it 'part of the administrative record.' … Dr. Chaney's opinion appears under the 'Court Transcript Index' but not under the 'Exhibits' list. Had the opinion been exhibited and affirmatively made a part of the record, that would demonstrate the Appeals Council had considered it.") (citations omitted).

Accordingly, when considering the language contained in the notice of the Appeals Council as well as the lack of both Kaiser Permanente records and Dr. Del Rosario's letter as exhibits in the transcript, it is sufficiently clear that the Appeals Council "looked at" the evidence but did not "consider" it. *See Hensley*, 2022 WL 891289, at *13 ("It appears sufficiently plain to the undersigned that the Appeals Council looked at Dr. Chaney's opinion just enough to conclude that it was not reasonably likely to change the ALJ's decision and therefore did not further "consider

13

1  it" or make it "part of the administrative record" as contemplated in *Brewes*.") (citation and
2  emphasis omitted); *see also Guzman v. Kijakazi*, No. 1:20-CV-0514 JLT, 2021 WL 6062645, at *3
3  (E.D. Cal. Dec. 22, 2021) (finding that Appeals Council's statement that it "did not exhibit this
4  evidence" meant that the Council "did not consider the evidence but merely looked at it").

5      Thus, the Court may not consider this evidence unless Plaintiff carries her burden to
6  demonstrate the evidence should have been considered by the Appeals Council.

                              *iii.  Analysis – Whether Plaintiff Has Met Her Burden Regarding Good Cause for Late Submission*

9      Insofar as Plaintiff asserts that the Appeals Council erred by failing to consider the evidence
10 and incorporate it into the exhibits, she does not meet her burden to set forth good cause for the late
11 submission.  Neither Plaintiff's motion for summary judgment nor the letter itself offer any facts,
12 reasons, or inferences that would permit the Court to find good cause.  (*See* Doc. 20; AR 9, 479-
13 484).  The Court is not even able to identify a precise date for when the evidence was submitted to
14 the Appeals Council.  However, presumably it was submitted, at the earliest, on the date Plaintiff
15 requested review by the Appeals Council (on or about January 11, 2021). (Doc. 479-482). Plaintiff
16 provides no explanation why the evidence was submitted, at a minimum, over two months after the
17 ALJ issued his decision and over four months after the hearing.  Nor did Plaintiff's counsel mention
18 any such records at the hearing, instead responding in the affirmative when asked by the ALJ
19 whether the record was complete.  (AR 309).

20     Thus, in failing to establish good cause for late submission of the evidence to the Appeals
21 Council, Plaintiff cannot meet one of the critical criteria set forth in the Social Security regulations
22 for a claimant seeking to demonstrate the evidence should have been considered by the Appeals
23 Council.  *See* 20 C.F.R. § 404.935(b).  *See Hensley*, 2022 WL 891289, at *14 (finding plaintiff
24 failed to establish good cause where she did not explain why physician's assessment was provided
25 seven months after the hearing and four months after the ALJ's decision and where "before the
26 ALJ, plaintiff's attorney never suggested that Dr. Chaney's opinion was being requested and
27 instead expressly told the ALJ … that the 'record is now complete and ready for adjudication'").

28     As Plaintiff's failure to establish good cause by itself results in a failure to meet her burden

1   under the applicable Social Security regulations, the Court need not reach the other factors (*i.e.*,
2   whether the evidence is new, material, relates to the period on or before the date of the hearing
3   decision, and there exists a reasonable probability that the additional evidence would change the
4   outcome of the decision).

**C. Whether the Environmental Limitations Included by the ALJ in the RFC Are Inconsistent with the Medical Record**

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); *id.* § 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. *Id.* However, an ALJ's RFC findings need only be consistent with relevant assessed limitations and not identical to them. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) ("Although the ALJ rejected any implication in Dr. Koogler's evaluation that Turner was disabled, he did incorporate Dr. Koogler's observations into his residual functional capacity determination ... These limitations were entirely consistent with Dr. Koogler's limitation."). Ultimately, a claimant's RFC is a matter for the ALJ to determine. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

An RFC that fails to include all of a plaintiff's credible limitations renders a vocational expert's testimony in reliance on the RFC "incomplete." *See Bagby v. Comm'r Soc. Sec.*, 606 Fed. App'x 888, 890 (9th Cir. 2015) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)). An ALJ need not use the same language as the medical opinion setting forth the limitations, as long as the RFC sufficiently accounts for the limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-1174 (9th Cir. 2008).

*i. Parties' Arguments*

Plaintiff asserts that "her severe impairment of asthma is only matched with a RFC to avoid frequent exposure to extreme cold and heat, avoid frequent exposure to irritants such as fumes, odors, dust and gasses as well as poorly ventilated areas." She states that her onset date "directly

1    coincides with her September 2017 asthma attack caused by exposure to fumes." She contends
2    that, thus, an RFC finding that she is capable of up to frequent exposure to "the same causative
3    elements is internally inconsistent with the medical record." (Doc. 20 at 5). As in her other
4    arguments pertaining to the issues raised in her brief, Plaintiff provides no further facts, reasoning,
5    or citations to the record in support.

6    Defendant asserts that the ALJ considered the longitudinal record, subjective symptoms,
7    activities of daily living, and medical opinion evidence when assessing the RFC. (Doc. 24 at 13).
8    Defendant states that the ALJ "emphasized treatment records consistently showing that Plaintiff's
9    pulmonary effort and breath sounds were normal, she was not in any respiratory distress, and she
10   did not have any rales or wheezes," and that x-rays of her chest "did not show any acute
11   cardiopulmonary abnormality or any acute chest disease." *Id.* at 14 (citations omitted). Defendant
12   asserts that the ALJ included environmental limitations in the RFC to account for Plaintiff's mild
13   persistent asthma. Defendant points to medical records from September 27, 2017, for the
14   conclusion that Plaintiff was diagnosed with an upper respiratory infection that day and the
15   physician determined that chemical and toxic compounds were not involved in the episode. *Id.* at
16   14-15 (citations omitted).

### *ii. Analysis*

When discussing Plaintiff's asthma in regards to the RFC, the ALJ stated as follows:

> With respect to the claimant's asthma, treatment notes consistently indicated that the claimant had mild, persistent asthma. It was also noted that the claimant has had asthma since childhood and that she last had an acute asthma exacerbation in October 2017. The notes also stated that the claimant was prescribed a nebulizer and an albuterol inhaler. However, treatment notes also consistently indicated that the claimant's pulmonary effort and breath sounds were normal, she was not in any respiratory distress, and she did not have any rales or wheezes. Finally, x-rays of the claimant's chest did not show any acute cardiopulmonary abnormality or any acute chest disease.

(AR 20) (citations omitted). As to Plaintiff's assertions concerning her asthma attack in September 2017, the record contains an entry from physician Rahila T. Andrews-Steele on September 27, 2017. (AR 937-967). In her progress notes, Dr. Andrews-Steele describes her discussion with

16

1    Plaintiff regarding upper respiratory problems from renovation work ongoing at her jobsite. Dr.
2    Andrews-Steele states that "[p]atient was actually seen [in] our office yesterday for a possible insect
3    bite, and had been seen a few days prior by her primary care provider due to that issue and ear pain
4    and had been started on some antibiotic which she is currently taking." Dr. Andrews-Steele then
5    states that "[t]his appears to be an upper respiratory infection compounded by her pre-existing
6    allergic hypersensitivity. The history is NOT consistent with the exam findings. It is my medical
7    opinion that more than likely the above alleged injury is NOT work related." (AR 942) (emphasis
8    in original).

9       The RFC assessed by the ALJ is as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she is able to occasionally climb ladders, ropes, and scaffolds. She is able to frequently climb ramps and stairs, stoop, crouch, kneel, and crawl. She is able to frequently finger with her left upper extremity. The claimant is further limited in that she must avoid frequent exposure to extreme cold and extreme heat. *She must avoid frequent exposure to irritants, such as fumes, odors, dust, and gases, as well as poorly ventilated areas.* She must also avoid frequent use of moving and/or dangerous machinery and frequent exposure to unprotected heights.

18   (AR 18) (emphasis added). It is plain that the medical record from Dr. Andrews-Steele, dated
19   September 27, 2017, is not inconsistent with the RFC formulated by the ALJ. Dr. Andrews-Steele
20   specifically noted that the cause of the visit was not work-related, after discussing work conditions
21   with Plaintiff. A further review of the medical record does not evidence inconsistency with the
22   RFC. (*See* AR 1037, 1099, 1124, 1154, 1212, 1226, 1237, 1313, 1335, 1384, 1472, 1567, 1593,
23   1637, 1723, 1727, 1781, 2245-2246).

24       The ALJ noted that state agency medical consultants P. Frye and A. Khong did not provide
25   sufficient environmental limitations to account for Plaintiff's asthma. (AR 20-21). Dr. Frye
26   recommended "asthma precautions," without further elaboration, but included no environmental
27   limitations in the RFC. (AR 364, 369). Dr. Khong did not recommend any environmental
28   limitations and included none in the RFC. (AR 380, 384). The ALJ also considered the opinions

of Plaintiff's own medical source, physician Kyaw Swe, and state agency psychological consultants Uwe Jacobs and Jane Buerger. (AR 21). Dr. Swe provided a fibromyalgia medical source statement which did not set forth any environmental limitations. (AR 1844-1845). Neither Dr. Jacobs nor Dr. Buerger provided any environmental limitations. (AR 365-366, 381-382). Thus, after assessing the opinion evidence of record, the ALJ included in the RFC environmental limitations beyond those proffered by healthcare practitioners of record.

Accordingly, regarding environmental limitations due to Plaintiff's asthma, the ALJ's RFC is supported by substantial evidence and is not inconsistent with the medical record.

*   *   *   *   *

In sum, the ALJ's findings at step four are supported by substantial evidence, as are the environmental limitations assessed in the RFC. The Appeals Council merely "looked at" the late-submitted evidence by Plaintiff and, as Plaintiff failed to establish good cause for the late submittal, this Court is precluded from assessing whether the Appeals Council should, in fact, have considered said evidence.

### IV.  CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 20) is DENIED;
2. The ALJ's decision is affirmed; and
3. The Clerk of the Court shall enter judgment in favor of Defendant, terminate any deadlines, and close this case.

IT IS SO ORDERED.

Dated: **June 26, 2025**                      _____
                                              UNITED STATES MAGISTRATE JUDGE